# STATE OF MICHIGAN

# COURT OF APPEALS

---

KENNETH W. BURKE and PAULINE F.
BURKE,

        Plaintiffs-Appellees,

v

ANTHONY LEO MAURER, SEBASTIAN
ESCALADA, STEPHEN ANDREW MAURER,
and NICHOL MAURER, also known as NICOLE
MAURER,

        Defendants-Appellants.

UNPUBLISHED
February 21, 2017

No. 329839
Washtenaw Circuit Court
LC No. 14-001183-NO

---

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Defendants appeal as of right from an order of judgment awarding plaintiffs $286,000 from defendant Anthony Maurer, $17,500 from defendant Sebastian Escalada, and $46,200 from defendants Stephen Maurer and Nichol Maurer. The judgment followed an order granting plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10), which was based on a determination that defendants had fraudulently conveyed property, and an order denying defendant's motion for reconsideration. We affirm the trial court's ruling but remand for a ministerial correction in the judgment.

## I. FACTS

This action stems from an earlier action in which plaintiffs sued Terry Maurer and Mary Ann Maurer (hereafter, collectively, "judgment debtors") on March 24, 2009, for failure to deliver an ownership interest in Avita Artesian Water, LLC, a corporation owned by Terry Maurer, in exchange for payment of $455,000. Plaintiffs obtained a consent judgment on July 21, 2011, by which judgment debtors agreed to pay plaintiffs $455,000. When judgment debtors defaulted on the consent judgment, plaintiffs discovered a quitclaim deed from judgment debtors to defendant Anthony Maurer, the brother of Terry Maurer, transferring several parcels of property in a development known as Deerfield Estates in Crawford County. The quitclaim deed had been recorded on March 9, 2009, about two weeks before plaintiffs filed their action against judgment debtors. Plaintiffs also discovered subsequent transfers of some of the parcels from

-1-

Anthony Maurer to defendants Stephen Maurer and Nichol Maurer, the son and daughter-in-law of judgment debtors, and to Sebastian Escalada, judgment debtors' former son-in-law.

Plaintiffs filed a complaint against defendants, alleging that judgment debtors' transfer of property and the subsequent transfers were fraudulent because they were intended to render judgment debtors uncollectible so as to avoid payment to plaintiffs on the consent judgment. Plaintiffs later filed a motion for summary disposition, arguing that defendants had failed to rebut plaintiffs' prima facie case of a fraudulent transfer by failing to produce evidence that the transfers were bona fide transactions. MCL 566.35; MCL 600.6131. The circuit court agreed and granted summary disposition for plaintiffs. Defendants filed a motion for reconsideration and produced various documents (not submitted in response to plaintiffs' motion) attempting to establish that judgment debtors' had transferred the property to Anthony Maurer to reimburse him for improvements to the development. The court denied defendants' motion.

## II. FRAUDULENT CONVEYANCE

Defendants argue that the trial court erred when it ruled that defendants were required to rebut plaintiffs' prima facie case of fraudulent conveyance with "concrete evidence." According to defendants, the Michigan Uniform Fraudulent Transfer Act (MUFTA), MCL 566.31 *et seq.*, does not provide that the burden of proof shifts to a defendant when a plaintiff establishes a prima facie case of fraudulent conveyance, so it was error for the court to conclude otherwise. Although it is true that MUFTA does not address this issue, section 6131 of the Revised Judicature Act, MCL 600.101 *et seq.*, does. MCL 600.6131(1) provides that where a plaintiff has established a prima facie case of fraudulent conveyance intended to avoid a judgment "by introducing in evidence the judgment against the principal defendant and proof of the conveyance complained of, . . . the burden of proof is then on the judgment debtor," and defendants have "to show that the transaction is in all respects bona fide or that the person is not holding as trustee of the judgment debtor."

Although defendants argue that clear and convincing evidence is needed to prove fraud,[1] MCL 600.6131(1) designates which party carries the burden and at what level. MCL 600.6131(1) expressly provides for a requisite quantum of proof and then shifts the burden to the defendant. In discussing suits begun by the filing of bills in aid of execution, 1917 PA 215, which set forth similar burden shifting, the Court in *Corbett v Williams*, 248 Mich 541, 543-544; 227 NW 545 (1929), stated:

> Under the law prior to the statute of 1917, the burden of proving fraud was upon the plaintiff, the party alleging it. But amendatory Act No 215, Pub Acts 1917,

---

[1] Defendants cite *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 457; 559 NW2d 379 (1996), but that case involved a showing that a corporate entity was used to commit a fraud, which was an element needed to pierce the corporate veil. In this context, citing *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976), which dealt with a claim of fraud and misrepresentation, the Court stated that "fraud must be established by clear and convincing evidence and must never be presumed." *Foodland Distrib*, 220 Mich App at 457-458.

provides that the plaintiff makes a prima facie case by introducing in evidence the judgment against the debtor, the execution and levies, and the conveyance complained of; and that then the burden of proof is upon the judgment debtor or those claiming under him to show the bona fides of the transaction.

. . . . The prima facie showing made by the plaintiff is not evidence that the conveyance was fraudulent. It is merely a presumption created by the statute for the purpose of placing the burden of proof, or perhaps more correctly the burden of proceeding, on the defendant, who is supposed to be in a better position to show the facts. This presumption of fraud vanishes on the coming in of positive evidence of good faith. It has no evidential value, and is not to be weighed against the evidence produced by the defendant.

As required by MCL 600.6131(1), plaintiffs attached the consent judgment to their complaint, as well as the quitclaim deeds from judgment debtors to Anthony Maurer and from Anthony Maurer to the other defendants. According to the statute, this evidence established a prima facie case of fraudulent conveyance that defendants were required to rebut by "show[ing] that the transaction[s] [were] in all respects bona fide," which the trial court held defendants failed to do. MCL 600.6131(1); *Corbett*, 248 Mich at 543. Having failed to do so, the presumption created by the statute did not dissolve. The trial court did not err by determining that the burden of proof shifted to defendants to rebut plaintiffs' prima facie case of fraud.

Defendants also argue that plaintiffs failed to show actual intent to defraud as required under MCL 566.34, and that they properly rebutted plaintiffs' prima facie case. The MUFTA provides that there are two different types of fraudulent transfers. The first type includes those made "[w]ith actual intent to hinder, delay, or defraud" a creditor, and applies to transfers made either before or after the creditor's claim arose. MCL 566.34(1)(a). The second type of transfer concerns constructive fraud and applies only to transfers made after the creditor's claim arose, and prohibits certain transactions regardless of the creditor's ability to prove the debtor's actual intent. *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014). Defendants assert that plaintiffs failed to prove actual intent to defraud because the only evidence offered to show that the transactions were fraudulent was the quitclaim deeds recording the transfers. According to defendants, this evidence was rebutted in an affidavit from Terry Maurer; defendants maintain that he "explained" the transfers and refuted each of the "badges of fraud" cited by plaintiffs.

MCL 566.34(2) provides as follows:

In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

-3-

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

In order for a trial court to decide "whether a transfer qualifies as made with an actually fraudulent intent" under MCL 566.34(1)(a), it must determine "the debtor's state of mind in making a transfer." *Dillard*, 308 Mich App at 448-449. In order to facilitate proof of fraudulent intent, "English courts . . . developed the doctrine of 'badges of fraud': proof by a creditor of certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration) would raise a rebuttable presumption of actual fraudulent intent." *Id*. at 449, quoting *BFP v Resolution Trust Corp*, 511 US 531, 540-541; 114 S Ct 1757; 128 L Ed 2d 556 (1994). "Badges of fraud are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *Dillard*, 308 Mich App at 449 (quotation marks and citation omitted). Although badges of fraud are not conclusive evidence of fraud, they "are more or less strong or weak according to their nature and the number concurring in the same case, and may be overcome by evidence establishing the *bona fides* of the transaction. However, a concurrence of several badges will always make out a strong case." *Id*. (quotation marks and citation omitted). MCL 566.34(2) sets forth a "nonexclusive list of 11 factors that may be considered in determining a debtor's actual intent in making a transfer" and which correspond to the historical badges of fraud. *Id*. at 449-450.

In their motion for summary disposition, plaintiffs alleged that six badges of fraud proved defendants' actual fraudulent intent in making the transfers: the transfers were between insiders, MCL 566.34(2)(a); judgment debtors had been sued or threatened with suit prior to the transfer, MCL 566.34(2)(d); the transfer was of substantially all of the debtor's assets, MCL 566.34(2)(e); the value of the consideration received by the debtor was nominal, MCL 566.34(2)(h); the debtors were insolvent shortly after the transfers were made, MCL 566.34(2)(i); and the debtors transferred the essential assets of the business to a lienor who then transferred them to an insider of the debtor, MCL 566.34(2)(k). Defendants argue that the only badge plaintiffs were able to show applied was that the transfer was to an insider. The circuit court did not specifically

address the badges of fraud raised by plaintiffs, but instead concluded that plaintiffs met "the legal threshold requirements . . . in any number of those factors." We will discuss each of these contested badges.

Before doing so, we must first address the Terry Maurer "affidavit" submitted by defendants in response to plaintiffs' motion for summary disposition, because that was the critical document attempting to explain the transfers at issue. Plaintiffs argue in their brief on appeal that the circuit court (and our Court) could not consider the affidavit because it was unsworn, see *Liparoto Constr Co v Gen Shale Brick, Inc*, 284 Mich App 25, 33; 772 NW2d 801 (2009) ("unsworn statements . . . are not sufficient to create a genuine issue of material fact to oppose summary disposition under MCR 2.116(C)(10)"), but plaintiffs' counsel conceded at oral argument before this Court that a notarized version of the affidavit had been filed with the circuit court the day of the motion hearing (though the time of filing is not indicated on the document or in the Register of Actions).

For two reasons we conclude that the Maurer affidavit should not be considered in our de novo review. First, according to the Register of Actions, the notarized version of the affidavit was filed after the motion hearing and after the order granting summary disposition was filed. Thus, it was not submitted to the trial court before the decision on the motion, and we now also cannot consider it. See *Pena v Ingham County Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). Second, even if it was filed before the motion hearing, there was no mention of this fact at the hearing before the circuit court, and thus it was never presented to, or pointed out to, the trial court. Hence, just because it may have been made a part of the record that morning, it was not properly presented to the trial court in deciding the motion. *Bernard Manufacturing v Gates Performance*, 285 Mich App 362, 376-379; 775 NW2d 618 (2009). Consequently, we review the trial court's decision without the benefit of the Maurer "affidavit."

## A. TRANSFER OR OBLIGATION TO AN INSIDER, MCL 566.34(2)(A)

Defendants argued that Anthony Maurer's sibling relationship with Terry Maurer was "incidental" to their business relationship, so that it was error to consider him an "insider" within the meaning of the statute. MCL 566.31(g)(i)(A) states that where a debtor is an individual, an "insider" is defined as a relative or general partner of the debtor. The statute provides no exception for relatives who may also have a business relationship with the debtor. Thus, under the statute, Anthony Maurer was an insider.

Although defendants claim that the brothers jointly owned each parcel in Deerfield Estates at the time of the transfer, the deed states that judgment debtors transferred the properties to Anthony Maurer, not that they conveyed a partial interest. Regardless, defendants have not explained why, if in fact the properties were jointly owned, Anthony Maurer would no longer be considered an insider within the meaning of the statute. We conclude that there was no genuine issue of material fact on this issue.

## B. DEBTOR SUED OR THREATENED WITH SUIT BEFORE TRANSFER, MCL 566.34(2)(D)

Defendants argue that this factor did not apply because plaintiffs failed to offer any evidence that on the date of the transfer from judgment debtors to Anthony Maurer, judgment debtors knew or had reason to know that plaintiffs would file their complaint two weeks later. The transfers by quitclaim deed were made on March 9, 2009, and plaintiffs' complaint was filed on March 24, 2009. However, it was undisputed that plaintiffs had previously filed a conversion action in the Oakland Circuit Court, which, after moving on venue grounds to Washtenaw County, was dismissed when judgment debtors agreed to make payments towards the debt owed. It was also undisputed plaintiffs filed this case on March 24, 2009 in Washtenaw County. Hence, this factor was established.

## C. TRANSFER OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, MCL 566.34(2)(E)

Plaintiffs alleged that the property transfer from judgment debtors to Anthony Maurer was of substantially all of their assets. In support of this assertion, plaintiffs cited in the trial court Terry Maurer's deposition testimony that he had no income from 2008 to 2011. Defendants countered with reference to Terry Maurer's unsworn affidavit that could not be considered, and also acknowledged that "90%" of Avita Artesian Water LLC that he still owned had been sold in a Chapter 11 proceeding. Defendants did not set forth the liabilities of the entity, and failed to list any other substantial assets they retained. Accordingly, defendants did not establish a genuine issue of material fact on this issue.[2]

## D. VALUE OF THE CONSIDERATION RECEIVED REASONABLY EQUIVALENT TO VALUE OF ASSET TRANSFERRED OR AMOUNT OF OBLIGATION INCURRED, MCL 566.34(2)(H)

According to the quitclaim deed, judgment debtors received only $100 consideration in exchange for the property transferred to Anthony Maurer. Defendants argued that consideration was actually "far more" than $100 because the property was transferred to satisfy a debt associated with developing the property. However, in doing so they relied upon the unsworn averment of Terry Maurer, which as we have repeatedly noted, cannot be considered. No other

---

[2]We note that defendants argue that Terry Maurer was not "insolvent" when he transferred the properties. However, whether judgment debtors were insolvent is not pertinent to determining whether the transfer represented substantially all of their assets. "Insolvent" means that a debtor has "liabilities that exceed the value of assets," or that he has "stopped paying debts in the ordinary course of business or [is] unable to pay them as they fall due." *Black's Law Dictionary* (7th ed). By comparison, the statute states that "the transfer was of *substantially all* of the debtor's assets." MCL 566.34(2)(e). Although a debtor may be both insolvent and have no substantial assets, it is possible for a debtor to transfer substantially all of his assets without being insolvent, and plaintiffs were not required to prove that judgment debtors were insolvent in order to show that this factor applied.

documents were submitted to establish this consideration, so defendants did not create a genuine issue of material fact. See MCR 2.116(G)(4) & (5).[3]

## III. DAMAGES

Defendants argue that the trial court's order that Anthony Maurer pay plaintiffs $286,600 in damages was error because this award represented the entire value of the transferred parcels, when Terry Maurer only transferred his half-interest in the parcels. According to defendants, the value of Terry Maurer's interest "was at best $143,300." In support of this assertion, defendants cite Terry Maurer's claim in his unsworn affidavit that he and Anthony Maurer were joint tenants in Deerfield Estates, as well as his testimony during deposition that he and his brother owned the property "jointly." We are not persuaded by this argument. Significantly, the quitclaim deed recording the transaction does not state that judgment debtors were conveying only a one-half interest in the property to Anthony Maurer. Rather, the deed indicates that the transfer was of fee simple in the entire property. Thus, defendants have not shown that the court erred by awarding plaintiffs damages against Anthony Maurer equal to the full value of the property based on their claim that only a one-half interest was conveyed.

Finally, defendants argue that the trial court erred by entering damages against Escalada and Stephen Maurer and Nicole Maurer for the full state equalized value (SEV) of the parcels while also entering damages against Anthony Maurer for the full SEV of the same property.

MCL 566.38(2) provides that a creditor "may recover a judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim, whichever is less." Judgment may be entered against either "[t]he first transferee of the asset or the person for whose benefit the transfer was made," or "[a]ny subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee." MCL 566.38(2)(a), (b). Additionally, MCL 566.37(1)(a) provides that "[i]n an action for relief against a transfer or obligation under this act, a creditor, subject to the limitations in section 8, may obtain . . . [a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Hence, the court did not err under MCL 566.38(2)(b) by allowing plaintiffs to recover the value of the asset from subsequent transferees Stephen Maurer and Nichol Maurer and Escalada, even though the court ordered Anthony Maurer to pay damages for the same property.

---

[3]When defendants moved for reconsideration, they offered evidence of the purported consideration for the transfer, but failed to present any such evidence in response to plaintiffs' motion. We decline to review these documents because they were not available to the circuit court when it decided plaintiffs' motion. See *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009) (holding that appellate review of the trial court's decision is limited to the evidence that had been presented at the time the motion was decided). Defendants did not appeal the denial of reconsideration.

However, pursuant to MCL 566.38(2), the court was permitted to award damages equal in value to the transferred property, or $286,000 total: "the creditor may recover a judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, *whichever is less*." MCL 566.38(2) (emphasis added). The trial court awarded a total of $350,400, so we remand for the ministerial act of modifying the judgment to reflect this lower award.

Affirmed and remanded. We do not retain jurisdiction. Plaintiffs may tax costs. MCR 7.219(A).

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray